IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARNA CONSHIPPING, S.L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-0027-KD-C |
| ) | |
| 1,800 METRIC TONS, MORE OR ) | |
| LESS, OF ABANDONED STEEL, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on Plaintiff Barna Conshipping, S.L.'s ("Barna") Second Motion for Writ of Attachment and Garnishment (Docs. 53, 54, 55), Plaintiff's Motion to Amend/Correct Second Motion for Writ of Maritime Attachment and Garnishment (Doc. 56) and Commercial Metals Company d/b/a Dallas Trading ("CMC") Opposition thereto (Doc. 63).[1]

**I.      Relevant Background**

On January 15, 2009, Plaintiff initiated this action by filing a Verified Complaint and request for issuance of warrant of maritime arrest pursuant to Rules C and D of the Supplemental Admiralty Rules (and motion for same), with regard to approximately 1,800 metric tons of "abandoned steel" cargo. (Docs. 1, 3, 4). On January 16, 2008, the Court authorized the Rule C arrest. (Doc. 12). Also on this date, Plaintiff filed a First Amendment to its Verified Complaint (Doc. 8), and CMC filed a Notice of a Rule E(8) restricted appearance and a Verified Statement of Right of Interest in the cargo. (Docs. 9, 10).

---

[1] The Court has also considered those portions of CMC's Reply (Doc. 57-2) and Plaintiff's sur-reply (Doc. 66), which address the issue of a Rule B attachment.

On February 13, 2009, CMC filed a Supplement to its Verified Statement. (Doc. 35). On February 18, 2009, Plaintiff filed a Second Amendment to its Verified Complaint, in which it asserted – *for the first time* – Supplemental Admiralty Rule B: "Barna brings this action against CMC, *in personam*, pursuant to Supplemental Rule B to recover costs which Barna has incurred as a direct and proximate consequence of the failure and refusal of CMC to accept delivery or possession of the Abandoned Cargo." (Doc. 36 at ¶18). On February 20, 2009, CMC filed an Answer, in which it asserted, in part, that there is no basis for admiralty subject matter jurisdiction and Plaintiff is barred from any relief because of its failure to possess a maritime lien against the cargo and its willful and wrongful arrest of the cargo. (Doc. 38). On this same day, CMC filed a motion to dismiss Plaintiff's Rule B, C and D claims, stating that admiralty jurisdiction is lacking. (Docs. 39, 40). On March 10, 2009, Plaintiff filed its response, stating that CMC's non-payment arising from certain contracts at issue constitute a maritime lien, which creates admiralty jurisdiction, providing Plaintiff with Rule B remedies. (Doc. 46, 47). Also on this day, Plaintiff filed a Notice of Dismissal of its Rule D Claims. (Doc. 45). On March 13, 2009, Plaintiff filed a motion for writ of maritime attachment and garnishment under Rule B, citing CMC's non-payment for costs of the cargo's transportation, unloading and storage, as grounds. (Docs. 48, 49). On March 17, 2009, the Court denied Plaintiff's motion for failure to comply with Rule B(1)(b) of the Supplemental Admiralty Rules (requiring that an affidavit be filed, with such a motion, stating that the defendant cannot be found within the district). (Doc. 50). On March 24, 2009, Plaintiff filed a second motion for writ of maritime attachment and garnishment under Rule B, seeking an attachment as to the 1,800 tons of cargo, and filed an affidavit in support thereof. (Doc. 53, 54, 55). On this same day, Plaintiff filed an amended second motion for writ of maritime attachment and

garnishment under Rule B; in so doing, Plaintiff did not indicate the reason for the amendment. (Doc. 56). On April 3, 2009, CMC filed its response thereto. (Doc. 63).

**II.    Discussion**

**A.    Rule B Attachment**

An attachment under Supplemental Admiralty Rule B is a *quasi in rem* proceeding which permits the assertion of jurisdiction over a defendant's property located within the district even though the court has no *in personam* jurisdiction over the defendant. See, e.g., Transamerica Leasing Inc. v. Amazonica, 1997 WL 834554,*2 (S.D. Ala. Jun. 26, 1997). Four prerequisites must be met by the plaintiff to secure a writ of attachment: 1) the plaintiff has an *in personam* claim against the defendant; 2) the defendant cannot be found within the district where the action is commenced; 3) property belonging to the defendant is present, or soon will be present, within the district; and 4) there is no statutory or general maritime law proscription to the attachment. Id. (citing Western Bulk Carriers, Pty. Ltd. v. P.S. Int'l, Ltd., 762 F. Supp. 1302, 1306 (S.D. Ohio 1991)). Once the plaintiff has demonstrated that he has met each of the substantive prerequisites, he must follow the procedural requirements outlined in Supplemental Rule E to invoke attachment properly. Notably, the plaintiff must first file a verified complaint with the court, which must be accompanied by an affidavit swearing that the defendant cannot be found within the district. FED.R.CIV.P.SUPP. B(1)(b). Additionally, Supplemental Admiralty Rule B and case law make clear that whether a defendant can be "found" within a district requires a two-pronged inquiry: 1) whether it can be found within the district in terms of jurisdiction; and 2) whether it can be found for service of process within the district. See, e.g., Nehring v. Steamship M/V Point Vail, 901 F.2d 1044, 1051, n. 6 (11th Cir. 1990); Transamerica, 1997 WL 834554 at *2. See also Navieros Interamericanos v.

M/V Vasilia Express, 120 F.3d 304, 314-315 (1st Cir. 1997). The first inquiry focuses on whether the defendant is present within the district by reason of minimum contacts and/or activities on its behalf by agents so as to subject it to the court's jurisdiction in *in personam* proceedings. Id. If not, then the defendant cannot be found within the district and this ground alone would be sufficient to support the attachment. Id. If so, however, even if the defendant can be found within the district in a jurisdictional sense, its property is not immunized from attachment. Id. The second inquiry then becomes necessary because the court must determine whether the defendant can be found within the district for purposes of service of process. Id. See, e.g., Transamerica, 1997 WL 834554 at *2-3; Caribbean Yacht Works, Ltd. v. M/V ""NEENAH Z"", 410 F. Supp. 2d 1261, 1267 (S.D. Fla. 2005).

**B.     Analysis**

At the outset, the only discernible difference between Plaintiff's second motion for writ of maritime attachment and garnishment under Rule B (Doc. 53) and Plaintiff's amended second motion for same (Doc. 56), is that the Affidavit attached to the former motion was not notarized. As such, the Court finds that Plaintiff's second motion for writ of maritime attachment and garnishment is **MOOT** in light of Plaintiff's amended second motion.

Concerning Plaintiff's request for a Rule B attachment, as noted *supra*, Plaintiff must establish that CMC cannot be "found" within this district ("found" within this district in terms of jurisdiction and for service of process) to secure this relief. See, e.g., Nehring, 901 F.2d at 1051, n.6; 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc., 992 F. Supp. 1423, 1425-1426 (M.D. Fla. 1997). Plaintiff asserts that a Rule B attachment against CMC is proper given the charges that it has incurred with the transportation, unloading and storage of the cargo at issue – charges

4

which CMC has not paid to Barna – and because CMC cannot be found within this district. In support of its motion, Plaintiff states as follows:

> Upon the Complaint and its verification, Amended Complaint, and Second Amended Complaint, and supporting Affidavit, issuance of the attachment and garnishment writ is proper form according to Supplemental Rule B. The cargo previously arrested by the Court and taken into custody by the Marshal is now in the custody of the Substitute Custodian, Norton Lilly International. There is no reason to alter this arrangement, and the Cargo should be allowed to remain in the custody of the Substitute Custodian once the writ of attachment is served by the Marshal.

(Doc. 54 at 5). In the March 24, 2009 affidavit filed by Plaintiff's counsel, Plaintiff asserts – in relevant part – as follows:

> \* \* \*
>
> 2. According to his [the attorney's] information and belief, the defendant cannot be "found within the district." This belief is based upon research that . . . [CMC] was not registered in this state as of the date this suit commenced (January 15, 2009), does not have an office within this district, does not own property here, does not have a state telephone number, and does not hold financial records in Alabama.
>
> 3. Furthermore . . . [CMC] registered as a foreign corporation in the State of Alabama on January 16, 2009 (the day after suit was filed herein), with its legal counsel, Jaime Batbeze [sic], as its Registered Agent.

(Doc. 56 (Affidavit of Allen E. Graham at ¶¶ 2-3)).

In its opposition, CMC contends that Plaintiff is not entitled to a Rule B attachment because the Court lacks admiralty jurisdiction and because CMC can be found within the district. (Doc. 63). CMC asserts that in the absence of admiralty jurisdiction, Rule B remedies are not available and that Plaintiff has failed to set forth facts establishing jurisdiction because Plaintiff makes no claim that CMC committed any maritime tort; rather, Plaintiff's claims are purely contractual in origin and the contract between CMC and the seller of cargo (CELSA) is a non-maritime land based commodity purchase and sale contract. CMC asserts further, that a Rule B attachment is only available if a defendant cannot be found within the district, and since here, CMC can be found within the district,

5

there can be no Rule B attachment.

The Court finds that Plaintiff's amended second Rule B[2] motion is due to be denied because even if the Court assumes that a claim exists against CMC within the Court's admiralty jurisdiction, the record reveals that CMC could readily be found within this District for purposes of service of process and moreover, that Plaintiff was aware of this fact before filing its Verified Complaint. Specifically, a review of the record reveals that on January 14, 2009, *the day before Plaintiff's initial Verified Complaint was filed*, counsel for CMC informed Plaintiff's counsel (Allen E. Graham, Esq.), in writing via hand delivery, that CMC had authorized two attorneys Jaime Betbeze, Esq. and Clay Rankin, Esq. of the law firm Hand Arendall in Mobile, Alabama, to serve as CMC's authorized agents for service of process in the Southern District of Alabama. (Doc. 63 at Ex. B). In this letter, Attorney Betbeze also specifically requested to Plaintiff (via Plaintiff's counsel), that process be served on him personally, and in so doing, agreed to waive any and all defenses based upon lack of personal jurisdiction, insufficiency of process and/or insufficiency of service of process. (Id.)

At 3:15 p.m. the next day, January 15, 2009, Plaintiff filed a Verified Complaint seeking a Rule C and Rule D arrest of the cargo at issue. (Doc.1). Plaintiff's Verified Complaint did not seek any relief under Rule B or a Rule B attachment and moreover, asserted no causes of action against CMC *in personam*. (Id.) Plaintiff's Verified Complaint directed that service upon CMC be effected by serving Clay Rankin and/or Jaime Betbeze of Hand Arendall, in Mobile, Alabama (listing the address and telephone number). (Doc. 1 at 5).

On January 16, 2009, Plaintiff filed a First Amended Verified Complaint, but again, did not

---

[2] Rule B provides that "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishess named in the process." FED. R. CIV. P. SUPP. RULE B(1)(a).

6

seek any relief under Rule B or a Rule B attachment and asserted no causes of action against CMC *in personam*. (Doc. 8). On this same date, CMC filed a Verified Statement of Right of Interest in the cargo. (Doc. 10). Also on this day, Attorney Betbeze wrote to Plaintiff's counsel (Attorney Graham) indicating that he understood that a complaint and motions had been filed in the Southern District of Alabama by Plaintiff, stating that "[*a*]*s I previously advised*, I have been authorized to accept any service of process" that Plaintiff "intends to serve" upon CMC, and providing Plaintiff's counsel with proof that CMC was registered to do business in Alabama as a foreign corporation with the Alabama Secretary of State (also designating Attorney Betbeze as CMC's registered agent in Alabama for service of process). (Doc. 63 at Ex. C (emphasis added)).

Plaintiff's amended second Rule B motion is due to be denied for the simple reason that Plaintiff cannot establish that CMC could not be "found" within this District, and the process of maritime attachment and garnishment is available only when a defendant cannot be found. See, e.g., Nehring, 901 F.2d at 1051, n. 6; Transamerica, 1997 WL 834554 at *2. As noted *supra*, the record reveals that the day before Plaintiff filed its initial Verified Complaint in January 2009, CMC notified Plaintiff, in writing, that it would submit to personal jurisdiction in the Southern District of Alabama and that Attorney Betbeze in Mobile, Alabama, was CMC's authorized agent in the Southern District of Alabama upon whom service of process could be perfected. Due to these facts, Plaintiff cannot establish that CMC could "not be found" within the District and thus, cannot establish entitlement to a Rule B attachment. Rather, it is clear that CMC could be "found" within this District for purposes of a Rule B attachment inquiry and that Plaintiff knew this at the time the Verified Complaint was filed.

Moreover, Plaintiff's March 2009 Affidavit does not provide for a contrary finding.[3] Indeed, it is notable that Plaintiff's Affidavit makes no mention, whatsoever, of either Attorney Betbeze's January 14, 2009 status as CMC's authorized agent for service of process or the fact that Plaintiff was notified of this fact the day before the Verified Complaint was filed. Plaintiff's Affidavit states that CMC "cannot be found" within the district because it "was not registered in this state as of the date this suit commenced (January 15, 2009), does not have an office within this district, does not own property here, does not have a state telephone number, and does not hold financial records in Alabama[]" and because CMC "registered as a foreign corporation in the State of Alabama on January 16, 2009 (the day after suit was filed herein), with its legal counsel, Jaime Batbeze [sic], as its Registered Agent." (Doc. 56 (Affidavit of Allen E. Graham at ¶¶ 2-3)). These assertions do not change the fact that the day before Plaintiff filed its Verified Complaint, Plaintiff knew that Attorney Betbeze was CMC's authorized agent for service of process and that CMC had agreed to waive any and all defenses based upon lack of personal jurisdiction, insufficiency of process and/or insufficiency of service of process. For these reasons, Plaintiff's Rule B motion lacks merit.

---

[3] The purpose of the Rule B affidavit is to "assure[ ] the district court that the plaintiff has been diligent in searching for the defendant within the district in which the action is filed." Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 422 (5th Cir. 2001). See also West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v. McAllister Bros., Inc., 829 F. Supp. 122, 124 (E.D. Pa. 1993) (providing that "[i]n order to satisfy the due diligence requirement, plaintiff must make a bona fide effort to locate the defendant within the district[]"). Before being entitled to invoke the measures of attaching another party's assets under Rule B, the plaintiff or its counsel must exercise due diligence in the determination of whether the defendant can be found within the district as set forth in Rule B(1)(b). If the plaintiff or its counsel has knowledge of the presence of an agent or representative of the defendant who can be served, the writ of foreign attachment is due to be vacated, and a plaintiff cannot look for the defendant in ways certain not be successful. See, e.g., Katerina Navigation Co., Ltd. v. United Orient & Atlantic Lines, Ltd., 2002 WL 31365200 (E.D. La. Oct. 17, 2002).

**III.     Conclusion**

Based on the foregoing, the Court finds that Plaintiff's Amended Second Motion for Writ of Attachment and Garnishment (Docs. 54, 55, 56) is **DENIED.**

**DONE** this the **14th** day of **April 2009.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**